**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| SHANNON PHELPS | CIVIL ACTION |
| VERSUS | |
| BATON ROUGE RADIOLOGY GROUP, INC., ET AL | NO. 10-865-CN CONSENT CASE |

## RULING & ORDER

This matter is before the Court on the 12(b)(1) Motion to Dismiss or, In the Alternative, Motion to Stay Proceedings and Compel Arbitration (R. Doc. 6) filed by defendant, Baton Rouge Radiology Group, Inc. ("BRRG"). Plaintiff, Shannon Phelps ("Phelps"), has filed an opposition (R. Doc. 8) to BRRG's motion, in response to which BRRG has filed a reply memorandum (R. Doc. 15).

## FACTS & PROCEDURAL BACKGROUND

Phelps filed this suit against BRRG, Professional Billing Systems, Inc. ("PBS"), and ABC Insurance Company in this Court on December 28, 2010.[1] In the original and amended complaints, she alleges that she began employment with BRRG and PBS on October 20, 2008, in a full-time data entry position. She contends that, in March 2010, she discovered that she was pregnant and notified her supervisor, Lauren Gray. On April 12, 2010, BRRG and PBS terminated Phelps' employment. She alleges that her termination was a result of intentional discrimination based upon her gender in violation of 42 U.S.C. §2000e *et seq.* and La.R.S. 23:342. Additionally and/or in the alternative, Phelps contends

---

[1] Phelps originally filed this lawsuit in state court but agreed to file a joint dismissal in favor of federal court when defendants, BRRG and PBS, filed motions to compel arbitration in state court.

1

that her pending pregnancy was a "motivating factor" in the decision by BRRG and PBS to terminate her.[2] Phelps also asserts that, after BRRG and PBS allegedly "eliminated" her position, they then posted that position as available for hire in the newspaper and online. As a result of the defendants' alleged actions, Phelps seeks "all sums as are reasonable under the premises, including compensatory damages, loss of past wages and future wages, loss of benefits, mental anguish, attorney's fees, costs and interest from date of judicial demand until paid pursuant to La. R.S. 23:303(A), et seq. §706(k) of Title VII of the Civil Rights Act of 1964, as amended, Title VII of the [C]ivil [R]ights [A]ct of 1964, 42 U.S.C. §2000e, et seq., 42 U.S.C. §1981(a), La. R.S. 23:303, et seq."

On March 24, 2011, PBS and BRRG filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively, motions to stay these proceedings on the basis that Phelps entered into an arbitration agreement with PBS, when she was hired (and as a condition of her employment), that requires her to submit "[a]ny claim or dispute arising from or related to" her employment with PBS or any "associate" of PBS, like BRRG, to binding arbitration, including claims brought under any "local, state, federal or common law dealing with the workplace." Such arbitration agreement was signed by Phelps and PBS; BRRG is not a signatory of the arbitration agreement.

On April 13, 2011, Phelps filed a motion to voluntarily dismiss PBS from this suit without prejudice on the basis that PBS was not her employer.[3] That motion was granted

---

[2] BRRG contends that her termination was part of a reduction in force.

[3] In support of the fact that Phelps was not an employee of PBS and instead was an employee of BRRG, Phelps refers to PBS's responses to plaintiff's requests for admission propounded in her separate state court action. Phelps contends that, in those responses, PBS denied that it was her employer. Phelps also contends, in her opposition to the present motion, that the employee who replaced her, Sherry Crum, works for BRRG. Finally, Phelps asserts that she was terminated "on BRRG letterhead." *See,*

2

on April 18, 2011, and PBS was terminated as a party to this litigation. On May 4, 2011, the remaining parties to this suit consented to proceed before a U.S. Magistrate Judge, and on May 16, 2011, this suit was referred to the undersigned for further proceedings and the entry of judgment.

On May 23, 2011, the undersigned denied PBS's Rule 12(b)(1) motion to dismiss as moot since PBS was dismissed from this litigation. BRRG's Rule 12(b)(1) motion to dismiss, or in the alternative, motion to stay is now before the Court for consideration.

## **LAW & ANALYSIS**

**I.   Motion to dismiss:**

  **(A)   Rule 12(b)(1) standard:**

The applicable standard of review under Fed. R. Civ. P. 12(b)(1) is the same as the standard for reviewing dismissals for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Wagstaff v. U.S. Dept. of Education*, 509 F.3d 661, 663 (5th Cir. 2007). "A claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of [his] claim which would entitle [him] to relief." *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348, 351 (5th Cir. 2003). The reviewing court "must accept all well-pleaded factual allegations in the light most favorable to the non-moving party." *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 181 (5th Cir. 1996). Conclusory allegations or legal conclusions, however, will not suffice to defeat a motion to dismiss. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997). A court's ultimate conclusion that a case should be dismissed may rest "on any

---

Phelps' opposition, R. Doc. 8-1, p. 1.

one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996)(citations omitted).

**(B)   Should Phelps be compelled to arbitrate with BRRG?**

"Arbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate unless the court determines the parties agreed to arbitrate the dispute in question." *Green v. Service Corp. Intern.*, 2009 WL 1560035, **2 (5th Cir. 2009), quoting *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998). When deciding whether a party may be compelled to arbitrate, the court must first determine if the party agreed to arbitrate the dispute; and if so, it must consider whether any federal statute or policy renders the claim nonarbitrable. *Id.*, citing *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). The first of those steps and the only step that is in dispute in this case involves consideration of two (2) issues: (1) whether a valid agreement to arbitrate exists between Phelps and BRRG; and (2) whether the dispute in question in this suit falls within the scope of the arbitration agreement. *Id.*

As to the first issue, a valid arbitration agreement certainly exists between Phelps and PBS, both of whom are signatories to that agreement.[4] The issue becomes more complicated, however, when evaluating whether BRRG, a non-signatory to that agreement,

---

[4] Although Phelps contends that a valid arbitration agreement does not exist between herself and PBS, she does not cite any legal basis for finding the arbitration agreement invalid. Instead, she relies solely upon the contention that she was not an employee of PBS and therefore she could not have a valid arbitration employment agreement with PBS. As discussed in Footnote 6 below, however, Phelps' contention that she was not an employee of PBS is a mischaracterization of the evidence and does not refute the competent evidence that BRRG has presented indicating that Phelps was, in fact, an employee of PBS, with whom she had a valid arbitration agreement.

can be considered a party to that agreement for whom arbitration can be compelled. In the Fifth Circuit, district courts are to apply federal substantive law in determining whether a non-signatory to an arbitration agreement can compel a signatory to arbitrate. *Green*, at \*\*2, n. 1, citing *Wash. Mut. Fin. Group, Llc v. Bailey*, 364 F.3d 260, 267, n. 6 (5th Cir. 2004); *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527-28 (5th Cir. 2000). "Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." *Id.*, citing *Sherer*, at 381 (quotation marks omitted). "If the agreement specifies the circumstances in which a signatory is required to arbitrate his claims against a non-signatory, the terms of the contract govern." *Id.*

The arbitration agreement signed by Phelps and PBS provides that "[a]ny claim or dispute arising from or related to this employment or the relationship of the parties hereto and/or involving any other staff, employee, principal or *associate of PBS*, shall be settled and finally determined by arbitration administered by the American Arbitration Association ("AAA") under its then-applicable rules as amended." *See*, R. Doc. 5-1, p. 7 [Emphasis added]. BRRG contends that it is an "associate of PBS," and as a result, Phelps is required to arbitrate any dispute involving it that relates to her employment, even though BRRG did not sign the arbitration agreement. The undersigned agrees. BRRG has presented undisputed evidence[5] indicating that it can be considered an "associate" of PBS and, thus, an entity covered by the arbitration agreement. Specifically, BRRG has presented the affidavit of Donald D. Trexler ("Trexler"), the Chief Executive Officer of BRRG and PBS, which attests to the following facts: (1) that, although PBS is a separate Louisiana

---

[5] As mentioned above, under the Rule 12(b)(1) standard of review, the Court is permitted to consider "the complaint supplemented by undisputed facts evidenced in the record."

corporation from BRRG, PBS provides various management services on behalf of BRRG, including accounting, personnel, billing, and financial services;[6] and (2) that PBS and BRRG share common ownership and maintain joint employee handbooks, confidentiality agreements, telephone and computer usage policies, and codes of employee conduct. *See*, Trexler Declaration, R. Doc. 5-1, and exhibits attached thereto. BRRG has also produced a copy of the confidentiality and computer usage polices signed by Phelps, which expressly state that BRRG is a "business associate" of PBS. *See*, Exhibits C and D to Trexler Declaration, R. Doc. 5-1. As BRRG explains in its motion, BRRG and PBS are so closely connected that Phelps "asserted intertwined claims of employment discrimination against both entities." *See*, R. Doc. 6-1, p. 7.

As to the second issue, *i.e.*, whether the dispute in question in this suit falls within the scope of the arbitration agreement, it is undisputed that this requirement for compelling arbitration is also satisfied. In the present suit, Phelps brings claims directly related to her employment at PBS/BRRG,[7] in that she contends that she was wrongfully terminated by

---

[6] BRRG is a Louisiana corporation that provides radiology services to patients within and outside of Louisiana.

[7] The issue as to whether Phelps was an employee of PBS or of BRRG is a matter of dispute between the parties, which further demonstrates the inter-connectedness of the two entities. As mentioned above in the procedural background section, Phelps contends that PBS denied, in its responses to her requests for admission in her state court suit, that it was her employer. Such is not an accurate characterization of PBS's discovery responses, however. As BRRG explains in its reply memorandum, PBS actually objected to all of Phelps' written discovery requests because it did not wish to waive its right to arbitration by participating in discovery. PBS also denied all of Phelps' discovery requests out of an abundance of caution and reserved the right to respond to those requests more fully after the state court ruled upon the defendants' pending motions to dismiss or to stay the litigation for purposes of arbitration. *See*, Exhibit 1 to Phelps' opposition, R. Doc. 8-3. Subsequently, PBS served Phelps with amended responses to her requests for admission, wherein it reserved its objections and admitted that it hired and employed Phelps until her termination as a result of a reduction in force on April 12, 2010. *See*, Exhibit 2 to BRRG's reply, R. Doc. 15-1. Thus, PBS's responses to Phelps' requests for admission fail to establish that Phelps was not an employee of PBS.

Moreover, although Phelps refers to the deposition testimony of Sherry Crum for the proposition

6

those entities on the basis of gender discrimination and because she was pregnant. The arbitration agreement that Phelps signed provides that she shall submit to "final and binding arbitration for any and all claims or disputes of any kind whatsoever arising out of or connected with employment with PBS, its Employee Manual, the subject matter and contents thereof or the designated parties hereto in any way, including without limitation, any claims or disputes involving benefits, stated or implied, sexual harassment claims arising out of Title VII of the Civil Rights Act; the Age Discrimination in Employment Act; the Employment Retirement Income Security Act; the Fair Labor Standards Act and any other local, state, federal or common law dealing with the workplace." *See*, R. Doc. 5-1, p. 7. The agreement further provides that "such binding arbitration pursuant to this employment shall be the sole and exclusive remedy for resolving any claims or disputes." *Id.* Finally, as mentioned above, the agreement provides that "[a]ny claim or dispute arising from or related to this employment or the relationship of the parties hereto and/or involving any other staff, employee, principal or associate of PBS, shall be settled and finally determined

---

that the employee who replaced her works for BRRG, Crum's testimony does not establish that fact definitively nor does it establish that Phelps was not a PBS employee. Crum's testimony does not state anything regarding Phelps' employer; furthermore, it indicates some confusion on her part as to the entity by which she is actually employed. Crum testified that she works at the PBS office and was hired there, but "to the extent [she knows]," her employer is BRRG. *See*, R. Doc. 8-4.

Contrary to the equivocal evidence referred to by Phelps, BRRG has presented competent evidence establishing that Phelps was an employee of PBS, such as PBS's amended responses to Phelps' requests for admission; Phelps' own admission in her amended complaint that she held a data entry position at PBS's office; the deposition testimony of Phelps' former supervisor, Lauren Gray, indicating that PBS employed all of the data entry personnel at the PBS office and that Gray is an employee of PBS and has never worked for BRRG; the declaration of PBS's CEO, Trexler, attesting that Phelps was a PBS employee; and a Receipt and Acknowledgment of PBS's Employee Manual, signed by Phelps, stating that she was employed by PBS on an at-will basis. *See*, PBS's amended responses to Phelps' requests for admissions, Exhibit 2 to BRRG's reply memorandum; Plaintiff's first amended complaint, ¶2; Deposition of Lauren Gray, Exhibit 3 to BRRG's reply memorandum, pp. 8-9, 13-14; Trexler declaration, ¶¶6, 7, 10; PBS Receipt and Acknowledgment of Employee Manual and Confidentiality Agreement, Exhibit A to Trexler declaration, R. Doc. 5-1, p. 4.

by arbitration . . ." *Id.* In sum, because Phelps alleges claims of intentional employment discrimination pursuant to both state and federal law against an associate of PBS, her claims against BRRG "arise out of" and are "connected with" her employment with PBS and are subject to the arbitration agreement.

The undersigned agrees with BRRG that the circumstances presented in *Green v. Service Corp. Intern.* are sufficiently similar to those existing in the present case to compel Phelps to arbitrate her claims against BRRG.[8] In *Green*, the plaintiff was hired by SCI Management, a subsidiary of defendant, SCI. The plaintiff signed a "Principles of Employment & Arbitration Procedures Agreement" soon after he began working for SCI Management, which provided in part:

> 1. *Matters Subject to Arbitration*: Employee and the Company agree that . . . all disputes related to any aspect of Employee's employment with the Company shall be resolved by binding arbitration. This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as disputes pertaining to the meaning or effect of this Agreement . . .

*Green*, at \*\*1. The plaintiff and all other SCI Management employees were transferred to a newly-created SCI subsidiary, SCI Funeral. The plaintiff did not sign another arbitration agreement after the transfer. He was subsequently terminated by SCI Funeral.

The plaintiff filed suit against SCI in federal district court; he did not bring any claims against his former employers, SCI Management or SCI Funeral. SCI simultaneously answered and filed a motion to compel arbitration. Initially, in deciding SCI's motion to

---

[8] Phelps failed to address or distinguish *Green* in any way in her opposition memorandum.

8

compel arbitration, the district court inferred that SCI was "the Company" referred to in the arbitration agreement because SCI's logo was featured on the agreement's first page. Later, the district court clarified that "the Company" referred to the plaintiff's employer, and that because SCI was an affiliate of that company, he was bound to arbitrate his dispute with SCI, regardless of whether his employer was SCI Management or SCI Funeral. The Fifth Circuit agreed. The Court of Appeals noted that it was undisputed that SCI was an affiliate of SCI Management, and since the agreement provided that the plaintiff would arbitrate certain specified claims against SCI Management and its affiliates, SCI could require the plaintiff to arbitrate any claims that fell within the scope of the arbitration clause, despite the fact that SCI was not a signatory to the arbitration agreement. *Id.*, at \*\*2. Additionally, in addressing the issue of whether the dispute fell within the scope of the agreement, the Fifth Circuit explained that the plaintiff agreed to arbitrate *any* claims for *wrongful discharge* against SCI, an affiliate of "the Company," SCI Management. Even if the scope of the arbitration clause was susceptible to more than one interpretation, the court noted that the clause was to be interpreted in favor of arbitration, and as a result, the Fifth Circuit held that the district court did not err when it compelled the plaintiff to arbitrate his claims against SCI. *Id.*, at \*\*3.

Similarly, in the present case, Phelps has not presented any evidence to refute that submitted by BRRG indicating that PBS plays an integral role in BRRG's business activities, in that it is the "management arm" of BRRG handling all of BRRG's accounting, personnel, billing, and financial services. Considering that the two entities are commonly owned and operated, they could certainly be considered "associates" for purposes of the arbitration agreement in question. BRRG can therefore require Phelps to arbitrate the

9

employment-related claims she asserts herein against it, particularly in light of the fact that arbitration agreement provisions are to be interpreted in favor of arbitration.[9] [10]

---

[9] *See, Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000)(arbitration is favored in the law); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)("[T]he courts of appeals have since consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999).

[10] The undersigned also agrees with BRRG that Phelps is equitably estopped from opposing arbitration with BRRG. The Fifth Circuit has held that application of the equitable estoppel doctrine is warranted when a signatory to an arbitration agreement raises allegations of "substantially interdependent and concerted misconduct" by both a non-signatory to the arbitration agreement and one or more of the signatories. *Grigson*, at 527-28; *Shere v. Green Tree Servicing, LLC*, 548 F.3d 379 (5th Cir. 2008)(When an agreement's terms do not expressly state whether a signatory may be compelled to arbitrate with a non-signatory, courts have drawn on various theories of contract and agency law, including equitable estoppel, to determine the non-signatory's rights and duties under the arbitration agreement). In the present case, Phelps alleged the exact same allegations of employment discrimination on the basis of gender and pregnancy against both PBS and BRRG. Accordingly, she asserted "substantially interdependent and concerted misconduct" by both a signatory (PBS) and a non-signatory (BRRG) to the agreement, and under the Fifth Circuit's decision in *Grigson*, BRRG can therefore compel Phelps to arbitrate under a theory of equitable estoppel. The fact that Phelps voluntarily dismissed the signatory-defendant, PBS, from this litigation does not preclude the remaining non-signatory defendant, BRRG, from using the equitable estoppel theory to compel arbitration. Both the Fifth Circuit, in *Grigson*, and the Eastern District of Michigan, in *Simpson v. LifeNet, Inc.*, 2010 WL 86328, *6 (E.D.Mich. 2010), recognized that voluntary dismissal of claims against the signatory-defendant in an "attempt at bypassing" an arbitration agreement does not prevent the plaintiff from being compelled to arbitrate by a non-signatory defendant. *See, Grigson*, at 530 ("After quickly filing a voluntary dismissal of that action, [plaintiffs] brought this one against McConaughey and Creative Artists, non-signatories to the distribution agreement, for *inter alia*, interfering with that agreement . . . this is a quite obvious, if not blatant, attempt to bypass the agreement's arbitration clause"); *Simpson*, at *6 ("The instant Plaintiff, like *Grigson*, is bringing an action against the non-signatory defendant, LifeNet, for actions taken in concert with the non-defendant signatory, MMR. Plaintiff's original [state court] cause of action against MMR is virtually identical to the instant [federal court] action against LifeNet. The factual basis is exactly the same . . . In addition, the procedural history reveals that the current action also appears to have been filed in an attempt to avoid the arbitration clause. I therefore suggest that estoppel precludes the instant action and that Defendant LifeNet's motion to dismiss should be granted").

*See also, Iverson v. Colom*, 2010 WL 3894057 (N.D.Miss. 2010)(granting a motion to compel arbitration where concerted misconduct by signatory and non-signatory defendants was alleged); *Griffin v. ABN Amro Mortg. Group, Inc.*, 2010 WL 1976575 (5th Cir. 2010)(holding that equitable estoppel permitted a law firm and one of its attorneys, who were non-signatories to the arbitration agreement, to compel arbitration against the signatory plaintiffs because the plaintiffs' claims against the signatory defendant, a mortgage company, were "substantially interdependent" with the plaintiffs' claims against the attorney and his firm, as they all related to the plaintiffs' default in terms of payment of a note and deed of trust and subsequent foreclosure proceedings); *Ford Motor Co. v. Ables*, 2006 WL 3431602 (5th Cir. 2006)(applying *Grigson* and holding that a non-signatory could compel arbitration because "substantially interdependent and concerted misconduct" with a signatory was alleged); *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384 (5th

**(C)     Dismissal or stay?**

Since the undersigned has determined that BRRG can compel Phelps to arbitrate her claims against it, the next issue that must be considered is whether this suit should be dismissed or stayed while the arbitration occurs. Section 3 of the Federal Arbitration Act requires that a court stay its proceedings on claims that are subject to arbitration. *See*, 9 U.S.C. §3. However, "if all the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311, n. 9 (5th Cir. 2003). Here, because "all issues raised in this action are arbitrable and must be submitted to arbitration [since they all arise out of Phelps' employment], retaining jurisdiction and staying the action will serve no purpose." *Fedmet*, at 678 (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). The undersigned will therefore exercise her discretion and dismiss this case without prejudice. *Heller v. Tesco Corp.*, 2009 WL 2232774 (S.D.Tex. 2009).[11]

---

Cir. 2006)(same); *Jureczki v. Bank One Texas, N.A.,* 2003 WL 22121027, **3 (5th Cir. 2003)(same); *Francisco v. Stolt-Nielson, S.A.*, 2002 WL 31697700 (E.D.La. 2002)(holding that a non-signatory corporate entity that was "closely related to another corporate entity" that was a signatory to an arbitration agreement could compel arbitration, where the plaintiff charged the signatory with the "very same allegations of Jones Act liability in a prior lawsuit that ar[ose] out of the same core of operative facts").

[11] *See also, Redish v. Yellow Transp.,Inc.,* 2008 WL 2572658 (N.D.Tex. 2008)(citations omitted)("Because the only claim asserted by plaintiff falls within the scope of the [arbitration agreement], the only possible role a court could have would be to review the arbitration award once the [arbitration] proceedings are concluded. Under these circumstances, the case should be dismissed rather than stayed"); *Nyakeriga v. Texas Instruments, Inc.*, 2007 WL 2398522 (N.D.Tex. 2007)(dismissing, rather than staying, an employment discrimination case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, on the basis that all of the plaintiff's claims fell within the scope of the arbitration provisions in the employment agreement); *Peschard v. Datamark, Inc.*, 2005 WL 1939173 (W.D.Tex. 2005); *Cameron v. National Resort Management Corp.*, 2007 WL 580622 (N.D.Tex. 2007); *Rent-A-Center, Inc. v. Barker,* No. 05-02191, R. Doc. No. 25 (W.D.La. 2006)(dismissing without prejudice a claimant's employment discrimination and tort claims based upon alleged gender and pregnancy discrimination on the basis that "[t]he weight of authority clearly supports dismissal of the case when *all* issues raised must be submitted to arbitration").

Accordingly;

**IT IS HEREBY ORDERED** that Baton Rouge Radiology Group, Inc.'s 12(b)(1) Motion to Dismiss or, In the Alternative, Motion to Stay Proceedings and Compel Arbitration (R. Doc. 6) is **GRANTED**, and the claims of plaintiff, Shannon Phelps, against Baton Rouge Radiology Group, Inc. are **DISMISSED WITHOUT PREJUDICE** and judgment will be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, June 2, 2011.

     **MAGISTRATE JUDGE CHRISTINE NOLAND**